526 So.2d 538 (1988)
Willie Earl REED
v.
STATE of Mississippi.
No. 57692.
Supreme Court of Mississippi.
June 3, 1988.
*539 Johnnie E. Walls, Jr., Walls & Irving, Greenville, for appellant.
Edwin Lloyd Pittman and Mike Moore, Attys. Gen. by DeWitt Allred, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before HAWKINS, P.J., and PRATHER and ANDERSON, JJ.
PRATHER, Justice, for the Court:
Willie Earl Reed was indicted for the September 28, 1983, murder of Robert L. Merrill. A change of venue from Washington County to Leflore County was ordered and the jury returned a verdict of guilty. At the sentencing hearing, the appellant was sentenced to life imprisonment. Motion for new trial/j.n.o.v. was overruled, and from the adverse ruling, the appellant appeals and assigns as error:
PROPOSITION NO. 1
THE COURT ERRED IN FAILING AND REFUSING TO GRANT INSTRUCTION D-3 OR SOME OTHER MANSLAUGHTER INSTRUCTION AS REQUESTED BY THE APPELLANT.
PROPOSITION NO. 2
THE COURT ERRED IN FAILING TO CONSIDER ALTERNATIVE SENTENCES PROVIDED UNDER THE YOUTH COURT ACT AND TO MAKE A RECORD OF THAT CONSIDERATION AND ULTIMATE FINDING AS MANDATED BY MAY V. STATE, 398 SO.2d 1331 (MISS. 1981).

I.
Willie Earl Reed (hereafter Reed) and Robert Lee Merrill (hereafter Merrill), both sixteen years of age, had a history of fighting with one another. The fighting episodes and altercations dated back three years.
On one occasion in 1980 while at a little league baseball game, Reed was accosted by Merrill and his cousin, Keith. The two boys chased Reed several miles. Prior to reaching Reed's house, Merrill and Keith caught Reed. Unable to escape, Reed was assaulted by the two boys.
Again, in 1982, while watching a game at the park the deceased, Robert Merrill, and several other friends approached Reed. A fight ensued in which the group attacked Reed.
Later in 1983, Robert Merrill and his cousin, Keith, were riding a moped in the park. At that time, they fired a pistol at Reed.
Incidents of this type were common throughout the years leading up to the morning of September 28, 1983. Prior to the morning of the shooting, Reed had received a .22 caliber pistol from one James Watson. Watson had given Reed the gun for protection in his walk home past the Merrills' grocery store. Claiming that he intended to return the gun to Watson, Reed took the weapon to school.
On the morning of the 28th, Reed, standing at his locker inside the Coleman Junior High School building, was approached by Merrill and another young man. At that time, Merrill told the appellant, Reed, that they "[would] finish where we left off in study hall... ." Reed's younger sister also approached him and warned him that Merrill and the other boys were planning to "get him" in the second period study hall.
After this altercation, Reed proceeded to the second floor looking for a girl named Nadine Winston. In proceeding to the second floor, Reed, the appellant, had stuffed a pistol in his pants. Reaching the second floor, Reed gave a duffel bag to Nadine Wilson. Having given the bag to Ms. Wilson, Reed proceeded back toward the stairs. At this time, Reed testified that Merrill and another young man approached him from behind. Merrill pushed Reed into a set of lockers. Thereafter, Merrill proceeded into his homeroom classroom.
Shortly after this confrontation, Reed proceeded to Merrill's homeroom in order to question Merrill about the foregoing incidents. Reaching the classroom door, *540 Reed was confronted by Ms. Porter, the homeroom teacher.
Ms. Porter, admonished Reed three times not to enter the classroom without permission. At this point, Reed pulled out the gun. Feeling that her first duty was to the other children, she grabbed Reed's right arm and the back of his shirt.
Despite Ms. Porter's attempts to restrain Reed, he broke free. Therein, the evidence is contradictory at best as to what transpired within the next few minutes. Reed testified, "I walked in. Robert jumped up. He came around; about the time he made it to the third desk, he reached. When he reached, I fired three shots." In contrast, other evidence reveals that Reed, proceeding directly to Merrill's seat, reached over another student and shot the victim in the head and three additional times.
Notwithstanding, the record clearly indicates that Reed entered Merrill's classroom, and shot Merrill with a .22 caliber pistol in the head, which by the autopsy was shown to have caused his death. Merrill was also hit in the left jaw, right back, and right elbow.

II.

DID THE TRIAL COURT ERR IN FAILING AND REFUSING TO GRANT INSTRUCTION D-3 OR SOME OTHER MANSLAUGHTER INSTRUCTION REQUESTED BY THE APPELLANT?
In substantiating the foregoing proposition, counsel for the appellant cites Miss. Code Ann. §§ 97-3-27 and 97-3-35. Section 97-3-35 reads as follows:
The killing of a human being, without malice, in the heat of passion, but in a cruel or unusual manner, or by use of a dangerous weapon, without authority of law, and not in necessary self-defense, shall be manslaughter.
Having cited this code section, Reed argues that he thought the deceased was reaching for something in his pants. Thereto, he was afraid that Merrill was going to do something to him, "and when he fired the shot he just lost control of himself."
Keeping this idea of self-defense in mind, Counsel for Reed explains "Though there is proof of self-defense, where there is evidence of a killing being perpetrated in the heat of passion, the Court should give, especially on request of the defendant, an instruction on manslaughter as a lesser included offense in a murder prosecution." See Cromeans v. State, 261 So.2d 453 (Miss. 1972).
In furtherance of the foregoing argument, Reed cites Lanier v. State, 450 So.2d 69 (Miss. 1984). Applying the reasoning in Lanier, counsel for Reed explains "the jury could have found that the fatal shot had been the result of sudden confrontation arising without deliberate design on the part of the defendant thereby reducing the offense to manslaughter."
With Reed's argument in mind, this Court concludes that the evidence presented in the record makes out a case of murder. Merrill, who was unarmed, made no threatening gestures toward Reed and, in fact, tried to duck behind another student. Reed shot Merrill in the head and shot him three more times after he had fallen.
In light of this evidence, the Court holds that the defendant's own testimony refuted his heat of passion theory. More specifically, this Court points to the defendant's testimony that his purpose in going to the classroom "was to ask Robert what this was all about, why it's still going, why they still jumping on me, why they still picking." Obviously, this testimony fails to reveal the frame of mind usually associated with "sudden heat of passion". Moreover, this Court holds that the defendant's actions do not constitute the crime of manslaughter.
Having stated the foregoing positions, this Court affirms with the trial court below that this case is either "murder or not guilty." Therein, the refusal of the lesser included offense instruction is proper in this case.

III.

DID THE TRIAL COURT ERR IN FAILING TO CONSIDER ALTERNATIVE *541 SENTENCES PROVIDED UNDER THE YOUTH COURT ACT?
In the second proposition, Reed points out that the lower court refused to seriously consider Miss. Code Ann. § 43-21-159(3). That section provides in pertinent part:
... If any child shall be convicted by any circuit court, the trial judge may, in his discretion, commit such child to the county jail for any term not in excess of one year, or he may suspend sentence and release on probation, or commit such child to the custody of the Department of Corrections or impose a fine as though the child was an adult, under such terms and conditions as he may prescribe....
Considering the fact that Reed was seventeen years old at the time of the sentencing, Reed contends that this section is relevant to the sentence imposed by the Court.
In support of this contention, counsel cites May v. State, 398 So.2d 1331 (Miss. 1981). Citing May, counsel for Reed explains, "This Court held that in those cases involving special circumstances surrounding a minor defendant the trial judge should consider seriously those alternatives enumerated in the statute."
With these words in mind, counsel contends,
"Though the Court has given lip service to the consideration of alternative sentencing, the trial court failed to make the specific findings and set forth the basis for the ultimate sentence as imposed as required by the statute in May, supra."
Considering the foregoing facts, this Court believes that the lower court did abide by the requirements set out in May. In support of this belief, this Court reviews the reasoning in May. This Court holds:
We think the Legislature, in providing alternative methods of sentencing of minors, intended in cases involving special circumstances surrounding a minor defendant, that the trial judge consider seriously those alternatives enumerated in the statute and that the presence or absence of facilities for care of a minor or offender be considered in the mitigation of the punishment provided by the statute... . The trial judge should have placed in the record the sources and facts of his study and should have permitted appellant's counsel to introduce evidence of the presence or absence of facilities administered at the Mississippi State Penitentiary... .
Id. at 1340.
Keeping these words in mind, this Court points out the lower court judge's extensive review of 24 letters submitted by acquaintances of the defendant. More specifically, the judge took into consideration the tender years of the accused in imposing the sentence.
Along these lines, the judge admits that he is fully aware of the discretion afforded him by the Youth Court Act. Despite this discretion, it was fully within the judge's discretion to impose a life sentence.
Having reviewed the record, this Court affirms the holding of the lower court.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and ROBERTSON, SULLIVAN, ANDERSON, GRIFFIN and ZUCCARO, JJ., concur.