743 So.2d 1042 (1999)
Donald REED, Jr., Appellant,
v.
STATE of Mississippi, Appellee.
No. 97-CP-01185-COA.
Court of Appeals of Mississippi.
May 18, 1999.
*1043 Inmate Legal Assistant, Attorney for Appellant.
Office of the Attorney General by Jean Smith Vaughan, Attorney for Appellee.
BEFORE McMILLIN, C.J., KING, P.J., AND DIAZ, J.
McMILLIN, C.J., for the Court:
¶ 1. This case comes before the Court as an appeal from the circuit court's denial of post-conviction relief on application of inmate Donald Reed, Jr. Reed suggested three grounds in his motion that warranted setting aside his sentence. He now raises as error before this Court the circuit court's decision to deny him any relief. Upon a review of the record, we conclude that one of Reed's issues has merit and that this case must be remanded for further appropriate proceedings.

I.

Facts
¶ 2. Reed and a companion were indicted for two counts of murder. Reed, who was fourteen years of age at the time, entered a guilty plea to both counts. A judgment accepting the pleas and sentencing him to life imprisonment on both counts, the sentences to run concurrently, was entered on October 11, 1995. Within three years of that date, and specifically on December 9, 1996, Reed filed a motion for post-conviction relief pursuant to authority of the Mississippi Post-Conviction Relief Act. In his motion, Reed made the following claims as showing his right to relief:
(1) Reed received ineffective assistance of counsel because his attorney misadvised him on matters related to potential sentencing.
(2) The trial court failed to determine that there was a factual basis for his plea or that he had voluntarily and intelligently entered a guilty plea.
(3) The trial court failed to consider alternative sentencing options available for sentencing juvenile defendants being tried as adults.
¶ 3. The trial court, without conducting a hearing on the motion or requiring a response from the State, determined that Reed had not demonstrated his right to relief under the statute. In the findings supporting the decision to deny Reed any post-conviction relief, the trial court did not address two of the issues raised by Reed. Instead, the court confined itself to Reed's claim of ineffective assistance of counsel. The court then concluded that Reed's motion did "not state a cause of action upon which relief can be granted" *1044 based on the court's review of the plea acceptance hearing. We conclude, based upon our review of the record, that the trial court was manifestly in error in his finding that Reed's motion had failed to state a claim for relief as to his second claim. It was, therefore, error to deny the motion without further proceedings required under the statute. Based on that conclusion, we have no alternative under the law except to reverse and remand for further proceedings.
¶ 4. Because of the trial court's failure to even acknowledge the existence of the issue which we conclude to have some measure of merit, we feel it necessary to make some comment on the issue.

II.

The Matter of Reed's Guilty Plea
¶ 5. There is a large body of law for the proposition that substantially more is required to permit an indicted individual to waive his right to trial and enter a plea of guilty than the mere fact that the defendant desires to do so. No such proposed guilty plea can be accepted by the trial court until the trial court, by its own inquiry, is satisfied in two principal areas. First, the court must be reasonably assured that the crime charged has, in fact, been committed and that the defendant has been implicated in its commission. Corley v. State, 585 So.2d 765, 767 (Miss. 1991). Secondly, the court must also be satisfied that the defendant understands and appreciates that he is waiving a substantial number of constitutional safeguards designed to prevent his unjust punishment if he enters a voluntary plea of guilty to the criminal charge. Horton v. State, 584 So.2d 764, 767 (Miss.1991).
¶ 6. Reed, in this case, complains principally that he did not fully understand the essential elements necessary to convict him of murder. Specifically, he claims that he had an incomplete or imperfect understanding that proof of premeditation or malice aforethought was an essential element of the State's case and that, if the State did not prove such premeditation beyond a reasonable doubt, he could not be convicted of murder. He faults the trial court for its failure to inform him of the essential elements of the crime of murder and also for the court's failure to conduct its own inquiry into the facts of the case to assure the court either that (a) Reed understood the issue of premeditation and was prepared to confess to facts that would show that he acted with premeditation or (b) the State was in possession of evidence admissible at trial that could, with reasonable certainty, be said to make a showing of premeditation strong enough to withstand a sufficiency challenge.
¶ 7. Such a claim requires this Court to review carefully the transcript of the proceeding at which Reed entered his guilty plea. Our review indicates that, during the colloquy at the hearing to accept Reed's plea, there was no discussion of the underlying facts that led to Reed's indictment. Reed was not asked to recite those acts he admitted committing that would support a murder charge. Nor was the State required to make a statement as to what evidence it possessed that, if believed by the fact-finder, would support a guilty verdict to murder.
¶ 8. The sole inquiry into the facts supporting the charge of double murder consisted of the following brief exchange. The trial court inquired, "You have entered a plea of guilty to Count I for the murder of Girardo Perez. Are you guilty of that crime?" Reed replied, "Yes, sir." An almost identical exchange then followed regarding the death of Jose Rodriguez. There was no inquiry into the facts surrounding the death of these two individuals nor was there any discussion of the essential elements of the crime of murder. There is nothing in the record that would indicate that Reed, a fourteen year old, was schooled in the criminal law and, therefore, possessed an independent understanding of the constituent elements of the crime of murder.
*1045 ¶ 9. In the case of Henderson v. Morgan, the United States Supreme Court reversed a judgment based on a guilty plea to murder because the record would not support a finding that the defendant possessed the necessary intent. Henderson v. Morgan, 426 U.S. 637, 647, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976). The Supreme Court found that there was no stipulation of the fact of intent, there was no indication that the defendant was told that a guilty plea would be an admission of intent, nor was there any inquiry into facts or statements by which the defendant's intent could be demonstrated. The Court said, "[i]n these circumstances it is impossible to conclude that his plea to the unexplained charge of second-degree murder was voluntary." Id. at 646, 96 S.Ct. 2253. The Mississippi Supreme Court has indicated that Henderson v. Morgan makes it "essential that an accused have knowledge of the critical elements of the charge against him...." Gilliard v. State, 462 So.2d 710, 712 (Miss.1985). Even though the supreme court ultimately affirmed the trial court's decision to accept Gilliard's guilty plea, the facts of that case stand in sharp contrast to the case now before us. In the Gilliard decision, the supreme court quoted at some length from the trial court's inquiry as to Gilliard's understanding of the various elements of the crime of murder, including specifically the element of malice aforethought. Id.
¶ 10. In the case of Gaskin v. State, our supreme court explained the importance of this aspect of accepting a guilty plea with the following observation:
Knowledge of the elements [of the crime] is obviously a prerequisite to an intelligent assessment by the defendant of: 1) whether he has in fact done anything wrong under the law, and 2) the likelihood that he stands to be convicted if he exercises his right to a jury trial.
Gaskin v. State, 618 So.2d 103, 107 (Miss. 1993).
¶ 11. Additionally, we observe that Uniform Circuit and County Court Rule 8.04.A.3. requires that, as a part of accepting a guilty plea, the trial court "must determine that the plea is voluntarily and intelligently made and that there is a factual basis for the plea." URCCC 8.04.A.3. (emphasis added).
¶ 12. Therefore, there is, on the face of this case, a legitimate issue as to whether the trial court could have reasonably been assured of the propriety of a guilty plea based on either of two related issues, i.e., (a) that the State had probative evidence that would support a murder conviction, and (b) that the defendant understood the various elements of the crime essential to support a conviction and was prepared to concede that evidence existed to prove these elements.
¶ 13. The trial court, in dismissing the post-conviction relief motion, appears to have been acting under authority of Section 99-39-11, which permits such action "[i]f it plainly appears from the face of the motion, any annexed exhibits and the prior proceedings in the case that the movant is not entitled to any relief...." Miss.Code Ann. § 99-39-11(2) (Rev.1994).
¶ 14. We conclude, for reasons we have stated, that the trial court erred when it dismissed Reed's motion in this manner, since it appears to this Court, judging solely from the motion and the record of the prior proceedings, that there is a reasonable basis to conclude that Reed may be entitled to relief under the statute. We do not foreclose the possibility that, after a fuller inquiry, Reed's plea may be found to have been given voluntarily after being fully informed of the consequences since, as the supreme court observed in Gaskin v. State:
[t]he failure of the court to advise [the defendant] of the elements of the charges to which he pled is harmless error if it can be shown that prior to the court's acceptance of [the defendant's] plea, he had already been advised through other sources of the critical elements *1046 of the offenses he was charged with.
Gaskin, 618 So.2d at 107.
¶ 15. For the reasons stated, we reverse and remand for further proceedings consistent with the statutory mandate of Section 99-39-11(3) and those ensuing sections of the Post-Conviction Relief Act that bear on the proper handling of Reed's motion.

III.

Reed's Remaining Issues
¶ 16. We cannot discern any error in the trial court's ruling that Reed's claim of ineffective assistance of counsel was without merit on its face. Therefore, except to the extent that the consultation of Reed's attorney in advising him as to the intricacies of pleading guilty to double murder may bear on the issue of the voluntary and informed nature of Reed's plea, we are of the opinion that no further inquiry into the adequacy of Reed's representation is appropriate.
¶ 17. We also observe that Reed's other issue, left unaddressed in the trial court's dismissal order, dealt with the trial court's failure to consider alternative sentencing under the provisions of the Mississippi Youth Court Act in view of Reed's age. Specifically, Reed argues that Section 43-21-159(3) required the trial court, despite having original jurisdiction of Reed's case under the Youth Court Act, to consider alternate sentencing as provided in that subsection. Reed claims that the trial court's statement that it had no alternative but to sentence Reed to life in prison was erroneous on its face and in violation of the provisions of Erwin v. State, which required the trial court to state in the record the reasons for "utilizing or not utilizing the alternatives afforded" under Section 43-21-159(3). Erwin v. State, 557 So.2d 799, 803 (Miss.1990).
¶ 18. Reed's argument on this issue is without merit since the Legislature amended Section 43-21-159(3) in 1994 to remove the alternative sentencing authority discussed in the Erwin case. At the time of Reed's alleged offense and his subsequent sentencing, both occurring in 1995, the statute, which formerly provided for the possibility of county jail time or probation for juvenile offenders convicted in circuit court, had been amended to state that "[i]f ... the youth is convicted of a crime by any circuit court, the trial judge shall sentence the youth as though such youth was an adult." Miss.Code Ann. § 43-21-159(4) (Supp.1995) as amended Miss.Code Ann. § 43-21-159(4) (Supp.1998).
¶ 19. Our remand is, therefore, limited to further inquiry as to Reed's contention that his plea was not an informed one due to his lack of understanding of the elements of the crime of murder and the trial court's failure to satisfy itself that facts existed to establish that a double murder had, in fact, been committed and that Reed was implicated in the commission of those crimes.
¶ 20. THE JUDGMENT OF THE CIRCUIT COURT OF SCOTT COUNTY DENYING THE APPELLANT'S MOTION FOR POST-CONVICTION RELIEF IS REVERSED AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS OF THIS APPEAL ARE ASSESSED TO SCOTT COUNTY.
KING AND SOUTHWICK, P.JJ., COLEMAN, DIAZ, AND IRVING, JJ., CONCUR.
LEE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY BRIDGES, PAYNE, AND THOMAS, JJ.
LEE, J., dissenting:
¶ 21. I disagree that the trial court failed to determine that there was a factual basis for Reed's guilty plea or that the guilty plea was voluntarily and intelligently entered, and therefore respectfully dissent *1047 with the majority's decision to reverse and remand.
¶ 22. The question of whether a plea was voluntarily and knowingly made is a question of fact. Reed bears the burden of proving by a preponderance of the evidence that he is entitled to relief. McClendon v. State, 539 So.2d 1375, 1377 (Miss.1989). It is important to remember that the remedy which is being sought is to set aside a final judgment which has been entered upon a plea of guilty given in open court, following the meticulous efforts of a trial judge to ensure that such plea is knowing and voluntary.
¶ 23. The majority found that the record does not indicate that the trial court conducted an inquiry to assure that Reed understood the issue of premeditation or malice aforethought as an essential element of the crime to which he pled or that the court showed that the State was in the possession of evidence that would show premeditation with reasonable certainty. The transcript of the plea hearing and Reed's petition to plead guilty clearly indicate that Reed told the trial judge that he murdered two men on July 29, 1995, that the indictment was read to him, that the indictment listed the elements of the crime, that he had fully discussed the indictment with his attorney, Christopher Collins, and that he understood the nature of the charges against him. The following colloquy appears in the record of the appellant's rearraignment hearing:
THE COURT:
What plea is entered?
MR. COLLINS: Guilty, Your Honor, to both counts by both Defendants.
THE COURT: What is the plea-bargaining agreement?
MR. COLLINS: Life sentences, Your Honor, to run concurrently.
THE COURT: I want the indictment read to them. Face the District Attorney and be rearraigned.(MR. TURNER, DISTRICT ATTORNEY, READS INDICTMENT TO THE DEFENDANTS)
The indictment reads as follows:
THE GRAND JURORS of the State of Mississippi, taken from the body of the good and lawful persons of the County of Scott, duly elected, empanelled, sworn and charged, at the Term aforesaid of the Court aforesaid, to inquire in and for the body of the County aforesaid, in the name and by the authority of the State of Mississippi, upon their oaths present: That Charles Jones and Donald Reed, Jr. late of the County aforesaid, on or about the 29th day of July in the year of our Lord, 1995, in the County and State aforesaid, and within the jurisdiction of this Court, as part of a continuing series of acts connected together and constituting, one with the other parts of a common design, scheme and plan,
COUNT ONE
did willfully, unlawfully, feloniously, and of their malice aforethought kill and murder Gerardo Perez, a human being, contrary to and in violation of Section 97-3-19(1)(a), Miss.Code Ann. (1972),
COUNT TWO
did willfully, unlawfully, feloniously, and of their malice aforethought kill and murder Jose Rodriguez, a human being, contrary to and in violation of Section 97-3-19(1)(a), Miss.Code Ann. (1972), against the peace and dignity of the State of Mississippi.
THE COURT: To that indictment, Charles Jones, Count I, how do you plead? ...
DEFENDANT JONES: Guilty.
THE COURT: To Count II, how do you plead?
DEFENDANT JONES: Guilty.
THE COURT: Donald Reed, Jr, to Count I, how do you plead?
DEFENDANT REED: Guilty.

*1048 THE COURT: To Count II, how do you plead?
DEFENDANT REED: Guilty.
THE COURT: Both Defendants, raise your right hand and be sworn by the Clerk.
(BOTH DEFENDANTS ARE SWORN BY THE CIRCUIT CLERK)
EXAMINATION OF DEFENDANT REED BY THE COURT:
Q. Now, Donald Reed, Jr., you are how old?
A. Fourteen.
Q. Now, you have entered a guilty plea to two crimes of murder, with these sentences to run concurrently. Do you understand that?
A. Yes, sir.
Q. Do you understand that is to run together?
A. Yes, sir.
Q. Do you understand that you are waiving your right against self-incrimination?
A. Yes, sir.
Q. Do you understand you are going to be sentenced to the penitentiary?
A. Yes, sir.
Q. Are you satisfied with Mr. Collins's services?
A. Yes, sir.
Q. Do you feel he has properly represented you in this case?
A. Yes, sir.
Q. Do you understand there is only one penalty for the crime of murder, and that is life imprisonment?
A. Yes, sir.
Q. Do you understand if I accept your plea, that is what the sentence of the Court will be?
A. Yes, sir.
Q. Do you understand that the Court has no discretion but to sentence you to life imprisonment?
A. Yes, sir.
Q. Have all these rights set forth in this petition to plead guilty been explained to you?
A. Yes, sir.
Q. Do you understand those rights?
A. Yes, sir.
Q. Did Mr. Collins explain them to you?
A. Yes, sir.
Q. Do you have questions to ask the Court regarding those matters?
A. No, sir.
Q. You have entered a plea of guilty to Count I for the murder of Girardo Perez. Are you guilty of that crime?
A. Yes, sir.
Q. Also, you have entered a plea of guilty to murder of Hose Rodriguez. Are you guilty of that crime?
A. Yes, sir.
Q. Are you pleading guilty, because you are guilty?
A. Yes, sir.
Q. Do you understand, also, this Court has no alternative but to sentence you to serve time with the Mississippi Department of Corrections, and the likelihood will be that you will be confined at Parchman, Mississippi? Do you understand that?
A. Yes, sir.
Q. Do you understand there are no other facilities available to the Court to sentence you but to the Mississippi Department of Corrections?
A. Yes, sir.
¶ 24. In addition, Reed completed the "Petition to Plead Guilty" in his own handwriting, stating that he was answering the questions in the petition in the presence of his attorney, Christopher Collins, in order to demonstrate to the court that he was knowingly, intelligently, understandingly, freely, and voluntarily entering his plea to the crime of "murder 2 counts." He further wrote that the indictment alleged that he "murdered Jose Rodriguez and Gerrardo *1049 Perez" and that he was pleading guilty to that murder. He also stated in the petition that he was not under the influence of drugs or intoxicants, that he had read the indictment which stated that he "willfully, unlawfully, feloniously and of malice aforethought" killed and murdered the victims. The petition also stated that he had fully discussed the indictment with his attorney, and that he understood the charge against him. In the petition he again stated that he was satisfied with the services of his attorney.
¶ 25. This should suffice to show that the plea was intelligently and voluntarily entered. It should also be evident that the contentions as to failure to advise of the nature of the charges and to determine that there was a factual basis for the plea are wholly without merit. Details regarding the crime need not be enumerated at a plea hearing. A factual showing of a plea "does not fail merely because it does not flesh out the details which might be brought forth at trial. Rules of evidence may be relaxed at plea hearings. Fair inference favorable to guilt may facilitate the finding." Corley v. State, 585 So.2d 765, 767 (Miss.1991).
¶ 26. Henderson v. Morgan, relied upon by the majority, is clearly distinguishable from the case sub judice. In that case, the element of intent was not found anywhere in the record to support a guilty plea to murder. Not only was it not found in the record but the case was found to be "unique because the trial judge found as a fact that the element of intent was not explained to the respondent." Henderson v. Morgan, 426 U.S. 637, 647, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976). Also, there was no representation in the record that defense counsel explained the nature of the offense to the accused. Contrary to Henderson, the elements of the crime are listed in the indictment in this case and are therefore part of the record and the record shows that Reed's counsel discussed the indictment with him. It has been held that "if sufficiently specific, an indictment or information can be used as the sole source of the factual basis for a guilty plea." U.S. v. Hinojosa-Lopez, 130 F.3d 691, 695 (5th Cir.1997). United States v. Davila, 698 F.2d 715, 717-18 (5th Cir.1983) found a factual basis for the guilty plea even though the court found that the explanation of the charges and the establishment of the factual basis for the plea might have been more detailed. The record was found to be adequate, especially in view of the presence of competent retained counsel to establish that the plea was comprehended and that the nature of the charges were explained.
¶ 27. Reed clearly stated that he "murdered" two men and gave their names. The record shows that Reed had an eighth grade education and that he himself completed and signed the petition to plead, showing that he had a level of literacy to comprehend his plea as set forth in the indictment. Though he probably did not possess knowledge of the legal definition of premeditation and malice aforethought as elements of murder as set forth in Black's Law Dictionary, it is utterly unreasonable to believe that his understanding of the term "murder" as used in his plea is one that would indicate that he believed it to mean "kill accidently." At the plea hearing the judge summarized the charges contained in the indictment and asked Reed whether he understood those charges. Reed answered that he did. Reed's attorney also executed a certificate stating that he had fully discussed the case with Reed and that he was satisfied that Reed had "knowingly, intelligently, freely and voluntarily" answered the questions in the plea, that the questions were answered in his presence orally and in writing, and that Reed had a full understanding of the consequences of the plea. What more should be required? Must the trial court now manufacture a defense for every defendant? Indeed, must it always be incumbent upon the court to view a guilty plea with skepticism dismissing the fact that a defendant can actually be pleading guilty *1050 to a crime because he is guilty of the crime? It is demanding on the trial judge's voice to repeatedly read and reread, often to multiple inattentive defendants. The time may very well have arrived when videotape should be used to advise defendants of their rights when entering pleas, as the voice of the trial judge would always be clear, distinct and consistent. It will suffice that the judge dominate and monitor the inquiry; however, the judge is not and should not be required to be the sole orator. "Judges, too, get sore throats." U.S. v. Henry, 113 F.3d 37, 41 (5th Cir.1997). It should not be necessary that the trial judge personally address the defendant of all matters. That is one purpose of counsel for the defendant.
¶ 28. Because it is my opinion that Reed has been more than adequately advised of his rights as well as the elements of the crimes for which he was charged, and because Reed has not met his burden of showing by a preponderance of the evidence that the findings of the trial court are defective, I respectfully dissent.
BRIDGES, PAYNE, AND THOMAS, JJ., JOIN THIS SEPARATE WRITTEN OPINION.