# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2009-CT-02033-SCT

*BRETT JONES*

*v.*

*STATE OF MISSISSIPPI*

### ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 11/19/2009 |
| TRIAL JUDGE: | HON. THOMAS J. GARDNER, III |
| COURT FROM WHICH APPEALED: | LEE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | SYLVIA S. OWEN |
| | THOMAS HENRY FREELAND, IV |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JEFFREY A. KLINGFUSS |
| NATURE OF THE CASE: | CIVIL - POST-CONVICTION RELIEF |
| DISPOSITION: | THE JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED IN PART AND REVERSED IN PART. THE JUDGMENT OF THE CIRCUIT COURT OF LEE COUNTY IS AFFIRMED IN PART AND REVERSED IN PART. THE SENTENCE IS VACATED, AND THIS CASE IS REMANDED TO THE CIRCUIT COURT OF LEE COUNTY FOR RESENTENCING - 07/18/2013 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**RANDOLPH, PRESIDING JUSTICE, FOR THE COURT:**

¶1.    Brett Jones was convicted of murder for stabbing his grandfather to death. In accordance with Mississippi Code Section 97-3-21, the trial judge sentenced Jones to life imprisonment. Miss. Code Ann. § 97-3-21 (Rev. 2006) ("Every person who shall be

convicted of murder shall be sentenced by the court to imprisonment for life in the State Penitentiary.").[1] Jones's conviction and sentence were affirmed by the Court of Appeals. *Jones v. State* (*"Jones I"*), 938 So. 2d 312 (Miss. Ct. App. 2006).

¶2.     This Court granted Jones leave to seek post-conviction relief in the Circuit Court of Lee County. In his petition for post-conviction relief before the circuit court, Jones argued, *inter alia*, that, because he was fifteen years old at the time of the murder, his life sentence violated the Eighth Amendment's prohibition against cruel and unusual punishment. The circuit court denied Jones's motion for post-conviction relief, and the Court of Appeals affirmed that judgment. *Jones v. State* (*"Jones II"*), 2011 WL 3671890 (Miss. Ct. App. Aug. 23, 2011), *reh'g denied* (Apr. 3, 2012).

¶3.     Jones then petitioned this Court for writ of certiorari, noting that two cases were pending before the United States Supreme Court which raised the issue of whether the Eighth Amendment forbids a sentence of life without parole for juveniles convicted of homicide. On June 25, 2012, the Supreme Court decided *Miller v. Alabama* (and the companion case *Jackson v. Hobbs*), __ U.S. __, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012). This Court granted Jones's petition for writ of certiorari and ordered supplemental briefing regarding the application of *Miller*. We have limited our review to that issue.

## ANALYSIS

___

[1]Mississippi Code Sections 97-3-19 and 97-3-21 have recently been amended by the Legislature to provide for three classifications of murder: capital, first-degree, and second-degree. *See* 2013 Miss. Laws Ch. 555 (S.B. 2377).

2

¶4.    Where an appeal raises a question of law, the applicable standard of review is de novo. *Lambert v. State*, 941 So. 2d 804, 807 (Miss. 2006) (citing *Brown v. State*, 731 So. 2d 595, 598 (Miss. 1999)).

¶5.    In *Miller*, the United States Supreme Court held "that the Eighth Amendment forbids a sentencing scheme that *mandates* life in prison without the possibility of parole for juvenile offenders." *Miller*, 132 S. Ct. at 2469 (emphasis added). The Court declined to impose a categorical bar on sentences of life without parole for juveniles, but "require[d] [the sentencing authority] to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." *Id*. The *Miller* Court identified multiple juvenile characteristics and circumstances which may exist that are precluded from consideration by a mandatory sentencing scheme:

> Mandatory life without parole for a juvenile precludes consideration of his chronological age and its hallmark features—among them, immaturity, impetuosity, and failure to appreciate risks and consequences. It prevents taking into account the family and home environment that surrounds him—and from which he cannot usually extricate himself—no matter how brutal or dysfunctional. It neglects the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him. Indeed, it ignores that he might have been charged and convicted of a lesser offense if not for incompetencies associated with youth—for example, his inability to deal with police officers or prosecutors (including on a plea agreement) or his incapacity to assist his own attorneys. *See, e.g.*, *Graham*, 560 U.S. at __, 130 S. Ct. at 2032 ("[T]he features that distinguish juveniles from adults also put them at a significant disadvantage in criminal proceedings"); *J.D.B. v. North Carolina*, 564 U.S. __, __, 131 S. Ct. 2394, 2400-2401, 180 L. Ed. 2d 310 (2011) (discussing children's responses to interrogation). And finally, this mandatory punishment disregards the possibility of rehabilitation even when the circumstances most suggest it.

*Id.* at 2468.

¶6.     We recently addressed *Miller* in *Parker v. State*, 2013 WL 2436630 (Miss. June 6, 2013) (*mandate not issued*). Like Jones, fifteen-year-old Parker was convicted for the murder of his grandfather and sentenced to life imprisonment. *Id.* at *1. Preliminarily, we found that "[p]rior to *Miller*, our trial courts were not required to hold an individualized sentencing hearing for juveniles before imposing a life sentence." *Id.* at *7. Thus, *Miller* imposed a new obligation with which this State must comport.[2] *Id.* We held that, although "murder does not carry a specific sentence of life without parole," the State's parole statute, Section 47-7-3(1)(h),[3] rendered Parker's life sentence "tantamount to life without parole." *Id.* Therefore, our sentencing and parole scheme "contravene[d] the dictates of *Miller*," as it made Parker ineligible for parole absent consideration of his youth by the sentencing authority. *Id.* We vacated Parker's sentence and remanded his case to the circuit court for a new sentencing hearing.[4] *Id.* at *10.

_____

[2]*See* *Teague v. Lane*, 489 U.S. 288, 301, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989) ("In general . . . a case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government.").

[3]Miss. Code Ann. § 47-7-3(1)(h) (Rev. 2011) ("No person shall be eligible for parole who is convicted except that an offender convicted of only nonviolent crimes . . . 'nonviolent crimes' means a felony other than homicide . . . .").

[4]In instructing the trial court on remand, this Court stated:

After consideration of all circumstances required by *Miller*, the trial court may sentence Parker, despite his age, to "life imprisonment." *See Miller*, 132 S. Ct. at 2469 ("[W]e do not foreclose a sentencer's ability to make that judgment in homicide cases . . . ."). However, if the trial court should determine, after

4

¶7. *Parker* was pending before this Court on direct appeal when *Miller* was announced. The United States Supreme Court has stated, "[w]hen a decision of this Court results in a 'new rule,' that rule applies to all criminal cases still pending on direct review." *Schriro v. Summerlin*, 542 U.S. 348, 351, 124 S. Ct. 2519, 159 L. Ed. 2d 442 (2004) (quoting *Griffith v. Kentucky*, 479 U.S. 314, 328, 107 S. Ct. 708, 93 L. Ed. 2d 649 (1987)). After determining that *Miller* imposed a new obligation, there was little question as to whether that obligation should apply if this Court found that Parker had received a mandatory sentence of life without parole. In contrast, Jones's conviction and sentence became final in 2006, more than five years before *Miller*. Jones is before this Court on collateral review. Thus, the issue presented today is whether *Miller* applies to cases which already have become final. Stated differently, we must determine if *Miller* applies retroactively to cases on collateral review.

I.

¶8. In *Teague*, a plurality decision, the United States Supreme Court held that, "[u]nless they fall within an exception to the general rule, new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced." *Teague v. Lane*, 489 U.S. 288, 310, 109 S. Ct. 1060, 103 L. Ed. 2d 334

---

consideration of all circumstances set forth in *Miller*, that Parker should be eligible for parole, the court shall enter a sentence of "life imprisonment with eligibility for parole notwithstanding the present provisions of Mississippi Code Section 47-7-3(1)(h)."

(1989). The *Teague* Court identified two exceptions to the general bar against retroactivity. The Court stated,

> First, a new rule should be applied retroactively if it places certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe. Second, a new rule should be applied retroactively if it requires the observance of those procedures that . . . are implicit in the concept of ordered liberty.

*Id*. at 307 (internal citations omitted). This Court expressly has adopted *Teague*'s "very limited retroactive application standard." *Manning v. State*, 929 So. 2d 885, 900 (Miss. 2006).

¶9.     In  ensuing cases, the United States Supreme Court has expounded upon the exceptions articulated in *Teague*. In *Summerlin*, the Court determined that *Teague*'s first exception encompassed rules "more accurately characterized as substantive rules not subject to the bar." *Summerlin*, 542 U.S. at 351-352 n.4. The Court stated, "[n]ew substantive rules generally apply retroactively . . . because they necessarily carry a significant risk that a defendant stands convicted of an act that the law does not make criminal or faces a punishment that the law cannot impose upon him." *Id*. at 351-52 (internal citations omitted). *Miller* solely addressed the latter.

¶10.    Although *Miller* did not impose a categorical ban on the punishment that the substantive law could impose, it explicitly foreclosed imposition of a *mandatory* sentence of life without parole on juvenile offenders. By prohibiting the imposition of a mandatory sentence, the new obligation prevents "a significant risk that a [juvenile] . . . faces a punishment that the law cannot impose on him." *Id*.

6

¶11. "[S]ubstantive rules . . . include[] decisions that narrow the scope of a criminal statute by interpreting its terms." *Id*. at 351-52 (citing *Bousley v. United States*, 523 U.S. 614, 620-621, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998)). Prior to *Miller*, everyone convicted of murder in Mississippi was sentenced to life imprisonment and was ineligible for parole. Following *Miller*, Mississippi's current sentencing and parole statutes could not be followed in homicide cases involving juvenile defendants. Our sentencing scheme may be applied to juveniles only after applicable *Miller* characteristics and circumstances have been considered by the sentencing authority. As such, *Miller* modified our substantive law by narrowing its application for juveniles.

¶12. The Legislature is the branch of government responsible for enactment of substantive law, which includes both crime and punishment. As we noted in *Parker*, "[t]he authority to say what constitutes a crime, and what punishment shall be inflicted is in its entirety a legislative question." *Parker*, 2013 WL 2436630, at *9 (quoting *Williams v. State*, 708 So. 2d 1358, 1361 (Miss. 1998)). However, its enactments must comport with both the United States and Mississippi Constitutions. *Miller* explicitly prohibits states from imposing a *mandatory* sentence of life without parole on juveniles. Thus, *Miller* rendered our present sentencing scheme unconstitutional if, and only if, the sentencing authority fails to take into account characteristics and circumstances unique to juveniles. When the *Miller* Court announced a new obligation prohibiting the application of our existing substantive law, it modified Mississippi substantive law.

II.

7

¶13. The dissent posits that this Court should declare Section 47-7-3(1)(h) unconstitutional as applied to every juvenile. This position was rejected by the *Parker* Court after full and careful deliberation. *See Parker*, 2013 WL 2436630, n.14 ("*Miller* does not require this Court to declare Section 47-7-3(1)(h) *per se* unconstitutional as applied to juveniles.") Declaring Section 47-7-3(1)(h) unconstitutional as applied to all juveniles would be an inordinate expansion of *Miller*'s holding. Application of Section 47-7-3(1)(h) to a juvenile is unconstitutional only absent consideration of the characteristics and circumstances unique to juvenile defendants by the sentencing authority.

¶14. To be clear, neither the sentencing statute, Section 97-3-21, nor the applicable parole provision, Section 47-7-3(1)(h), has been abrogated, as posited by the dissent. Section 97-3-21 does not violate the *Miller* mandate. Section 47-7-3(1)(h) cannot be applied in all cases, but can be applied constitutionally to juveniles who fail to convince the sentencing authority that *Miller* considerations are sufficient to prohibit its application. Therefore, in order to comply with the United States Constitution and to make *Miller* considerations more than perfunctory, we put in place a "stop-gap mechanism" which allows the sentencing authority "to annul application of Section 47-7-3(1)(h)." *Parker*, 2013 WL 2436630, at *9. This mechanism enables the trial judge to nullify application of subsection (h) to ensure protection of a juvenile's Eighth Amendment rights.

¶15. This mechanism does not, as the dissent suggests, allow a juvenile defendant convicted of murder to be sentenced to life without parole. While we all recognize that a life sentence for murder is tantamount to life without parole, we expressly rejected that a juvenile

could be sentenced to life without parole in **Parker**. *See Parker*, 2013 WL 2436630, at n.21 ("[T]oday's decision only grants the trial court the authority to sentence a juvenile to 'life imprisonment' – the maximum sentence allowed by statute.").

¶16.    The dissent further posits that declaring Section 47-7-3(1)(h) unconstitutional as applied to all juveniles "minimizes our intrusion into any legislative function." Diss. Op. ¶ 24. Yet, while seeking not to appropriate this legislative function, the dissent would declare a valid legislative enactment  unconstitutional, even though it already has been shown that Section 47-7-3(1)(h) can be applied constitutionally to certain juveniles.

¶17.    Finally, the dissent misconstrues the actual effect of the holding in **Parker**, and suggests that "the revised sentence will have no effect." Diss. Op. ¶ 27.  I doubt Mr. Jones would agree, given that today's decision grants him an opportunity to be relieved of a **mandatory** life sentence. If the sentencing authority concludes, after **Miller** consideration, that Jones's eligibility for parole should not be foreclosed by the parole statute, he is to be sentenced to "life imprisonment with eligibility for parole notwithstanding the present provisions of Mississippi Code Section 47-7-3(1)(h)." *See supra* n.4. In that event, subsection (h) will have been annulled by the sentencing authority, and Jones will be eligible for parole subject to the general provisions of Section 47-7-3(1).

## CONCLUSION

¶18.    We are of the opinion that **Miller** created a new, substantive rule which should be applied retroactively to cases on collateral review. We affirm in part and reverse in part the Court of Appeals' judgment and the trial court's denial of post-conviction relief. We vacate

9

Jones's sentence and remand this case to the Circuit Court of Lee County for a new sentencing hearing to be conducted consistently with this Court's opinion in **Parker**.[5] *See supra* n.4.

¶19.    **THE JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED IN PART AND REVERSED IN PART. THE JUDGMENT OF THE CIRCUIT COURT OF LEE COUNTY IS AFFIRMED IN PART AND REVERSED IN PART. THE SENTENCE IS VACATED, AND THIS CASE IS REMANDED TO THE CIRCUIT COURT OF LEE COUNTY FOR RESENTENCING.**

   **WALLER, C.J., DICKINSON, P.J., LAMAR, PIERCE AND COLEMAN, JJ., CONCUR. KITCHENS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY CHANDLER AND KING, JJ.**

   **KITCHENS, JUSTICE, DISSENTING:**

¶20.    For the reasons stated in my separate opinion in **Parker**, I disagree with the Court's remanding the present case to the circuit court for resentencing.  **Parker v. State**, 2011-KA-01158-SCT (¶¶ 31-38) (Miss. June 6, 2013) (Kitchens, J., concurring in part and dissenting in part, joined by Dickinson, P.J., Chandler and King, JJ.).[6]  While  capital murder may be punished by a sentence of life without parole, Jones received a life sentence for *murder*, the only punishment that our courts (*i.e.*, the "sentencing authority") may impose for that crime.

---

[5]Our disposition in this case comports with the disposition of **Miller's** companion case, **Jackson**. **Jackson** was before the United States Supreme Court on collateral review. Upon remand, the Supreme Court of Arkansas remanded Jackson's case to the trial court for resentencing. **Jackson**, 2013 WL 1773087, at *2 (Ark. Apr. 25, 2013)

[6]On July 8, 2013, Parker filed a motion for rehearing now pending before the Court. Mot. for Reh'g, **Parker**, 2011-KA-01158-SCT (Mot. No. 2013-2030).

*See* Miss. Code Ann. § 97-3-21 (2012).[7]   Yet, our probation and parole statutes automatically foreclose the possibility of parole for those convicted of a violent crime. Miss. Code Ann. § 47-7-3(1)(h) (Rev. 2011). Our trial courts can impose only those sentences allowed by statute, whereas authority over parole eligibility is vested in the executive branch, specifically, the State Parole Board. *See* Miss. Code Ann. §§ 47-7-1 to 47-7-55 (the Parole and Probation Law).  Thus, it is the parole statute, Mississippi Code Section 47-7-3(1)(h) (Rev. 2011), that violates ***Miller***'s declaration that "mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishment'." ***Miller v. Alabama***, __U.S.__, 132 S. Ct. 2455, 2460, 183 L. Ed. 2d 407 (2012); U.S. Const. amend. VIII.  Accordingly, I would adopt the approach taken by the Wyoming Supreme Court when addressing their statutes and hold

---

[7] The sentencing statute in effect at the time provided:

> Every person who shall be convicted of murder shall be sentenced by the court to imprisonment for life in the State Penitentiary.
> Every person who shall be convicted of capital murder shall be sentenced (a) to death; (b) to imprisonment for life in the State Penitentiary without parole; or (c) to imprisonment for life in the State Penitentiary with eligibility for parole as provided in Section 47-7-3(1)(f).

Miss. Code Ann. § 97-3-21 (Rev. 2006).  As noted by the majority, this statute has been amended, and, effective July 1, 2013, there will be three types of murder under Mississippi law: first-degree murder, second-degree murder, and capital murder. 2013 Miss. Laws WL No. 269 (S.B. 2377).  Under these 2013 revisions, Jones's crime would be designated as "first-degree murder."  The only sentence for "first-degree murder" – imprisonment for life – will be the same as the sentence currently provided for murder.  The corresponding parole statute was not amended.  Miss. Code Ann. § 47-7-3 (Rev. 2011).

11

Section 47-7-3(1)(h) unconstitutional as applied to juveniles convicted of murder, in light of *Miller*. *See Bear Cloud v. Wyoming*, 294 P. 3d 36 (Wyo. 2013) (construed in *Parker*, 2011-KA-01158-SCT). Therefore, rather than remanding the case for resentencing, I would grant Jones's petition for post-conviction relief as it relates to his sentence, and I would declare that, for juvenile offenders convicted of murder, the parole authorities shall apply only the general parole provision of Section 47-7-3(1).[8]

¶21.  I agree that Jones's life sentence for murder is tantamount to a sentence of life without parole. But, under Section 97-3-21, life without parole is a sentencing option for capital murder, but not for murder. Indeed, the State recently argued that the imposition of a sentence of life without parole for murder was legally permissible because Section 47-7-3(1)(h) foreclosed eligibility for parole. *Fernando Martinez Parker v. State*, 30 So. 3d 1222, 1227-28 (Miss. 2010). In rejecting that argument, we held that Section 47-7-3 "does not affect a judge's sentencing prerogative under the criminal statutes." *Id.* at 1228. Because

---

[8]Section 47-7-3(1) provides:

Every prisoner who has been convicted of any offense against the State of Mississippi, and is confined in the execution of a judgment of such conviction in the Mississippi Department of Corrections for a definite term or terms of one (1) year or over, or for the term of his or her natural life, whose record of conduct shows that such prisoner has observed the rules of the department, and who has served not less than one-fourth (1/4) of the total of such term or terms for which such prisoner was sentenced, or, if sentenced to serve a term or terms of thirty (30) years or more, or, *if sentenced for the term of the natural life of such prisoner, has served not less than ten (10) years of such life sentence, may be released on parole* as hereinafter provided . . . .

Miss. Code Ann. § 47-7-3(1) (Rev. 2011) (emphasis added).

a sentence of life without parole "exceeded the statutory maximum," we vacated the sentence and remanded "for resentencing within the statutory guidelines." *Id.* at 1228, 1235.[9]

¶22. The Court's having explicitly rejected the notion that, in Mississippi, a sentencing court has the authority to determine parole eligibility for those convicted of murder, mandatory life without parole is a product of Mississippi's parole and probation statutes, specifically Section 47-7-3(1)(h). When recently interpreting *Miller* under a similar statutory scheme, the Wyoming Supreme Court held that the least intrusive approach would be to leave the sentencing statute undisturbed and hold the statutes which barred parole for offenders serving life sentences "unconstitutional as applied to juvenile offenders." *Bear Cloud*, 294 P. 3d 36. This solution is simple, preserves judicial resources, respects the legislative authority to prescribe the bounds of sentences, and does not encroach on the executive branch's statutory authority over parole matters.

¶23. Although the *Parker* majority reasoned that its was "chart[ing] the same course" as *Bear Cloud*, 294 P. 3d 36, it clearly did not. *Parker*, 2011-KA-01158-SCT at ¶ 24. Unlike

---

[9]Likewise, in *Brown v. State*, 731 So. 2d 595 (Miss. 1999), this Court rejected the defendant's argument that his sentencing order amounted to a mandatory minimum sentence without parole. The Court explained that "[e]xclusive power over the granting and revoking of parole is vested in this State's parole board." *Id.* at 598 (citing Miss.Code Ann. § 47-7-5 (Supp.1998)). The opinion noted that, while "certain statutes specify that a trial court may or must impose a sentence 'without the possibility of parole' . . . this sentencing authority is separate and distinct from the parole board's authority to grant or revoke parole." *Id.* (citing Miss. Code Ann. § 97-3-21 (1994) (capital murder conviction permitting sentence of life without parole); *Mitchell v. State,* 561 So. 2d 1037, 1039 (Miss. 1990)). Citing *Mitchell*, 561 So. 2d at 1039, the Court reiterated that "where the trial court has no statutory authority to limit parole, language purporting to do so is without legal effect." *Mitchell*, 561 So. 2d at 599.

Parker, (and Brett Jones), the *Bear Cloud* case, 294 P. 3d 36, involved a juvenile convicted of "murder in the first degree," *i.e.*, the equivalent of capital murder in Mississippi. [10] The Wyoming Supreme Court explained that, under the "clear and unambiguous" language of the sentencing statute, the permissible sentences for first-degree murder in Wyoming are "life imprisonment without parole or life imprisonment according to law." *Id.* at 44 (citing Wyo. Stat. Ann. § 6-2-101(b) (2009)).[11] Although the defendant was sentenced to "life imprisonment according to law," two other statutes prohibited Wyoming's parole board from granting him parole. The *Bear Cloud* opinion held that the least intrusive approach under *Miller* was to leave the sentencing statute undisturbed and hold the statutes which barred parole for offenders serving life sentences "unconstitutional as applied to juvenile offenders." *Bear Cloud*, 294 P. 3d at 45-46. The Wyoming Supreme Court explained that:

> We find this statutory interpretation most appropriate for two reasons. First, it minimizes our intrusion into any legislative function while allowing trial courts to impose the existing possible statutory sentences for first-degree murder in a constitutionally permissible way. Second, it separates "life imprisonment without parole" from "life imprisonment according to law," making them truly discrete, individual punishments when applied to juveniles.

*Id.* at 46.

¶24.    In contrast, the majority rejects this view and holds that juveniles convicted of murder should be resentenced, following a circuit court hearing, to either life or "life imprisonment

---

[10]The defendants in *Miller*, 132 S. Ct. 2455, also were convicted of capital murder.

[11]For adult offenders, the death penalty is a third option, but the statute specifically prohibits a death sentence "for any murder committed before the defendant attained the age of eighteen (18) years." *Id.*

14

notwithstanding the provisions of Mississippi Code Section 47-7-3(1)(h), as it presently provides." Despite its insistence to the contrary, the majority holds that a juvenile convicted of murder may now be sentenced to life or life without parole.[12] This decision ignores the clear distinctions between capital murder and murder. By explicitly providing harsher sentencing options for capital murder (one of which is death if the offender is an adult), it cannot be doubted that the Mississippi legislature views capital murder as a more heinous crime than murder. Thus, rather than our disturbing "the existing possible statutory sentence" for murder under Mississippi Code Section 97-3-21, finding the parole statute unconstitutional as applied to juveniles convicted of murder "minimizes our intrusion into any legislative function," while preserving distinct sentences for murder and capital murder. **Bear Cloud**, 294 P. 3d at 46. Under this approach, subsection (1)(h) is inapplicable, and the juvenile would be subject to the general provisions, *i.e.*, subsection (1) only, of the parole statute, which permits release on parole after the serving of ten years of a life sentence. Miss. Code Ann. § 47-7-3(1).

¶25. Notably, this approach was advocated by the State in **Parker**, 2011-KA-01158-SCT at ¶ 27. The **Parker** majority rejected this view. **Id.** The majority decision in the present case renders the same result, finding that **Miller** requires our trial courts "to hold an

---

[12]Otherwise, there is no distinction between a sentence of life and "life imprisonment notwithstanding the provisions of Mississippi Code Section 47-7-3(1)(h), as it presently provides."

15

individualized sentencing hearing" which may result in a sentence of life with eligibility for parole or life without parole. Maj. Op. ¶ 6.

¶26. Yet, the main holding of *Miller* is that "mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishment'." *Miller*, 132 S. Ct. at 2460; U.S. Const. amend. VIII. This requires our Court to apply *Miller* to Mississippi's relevant statutes in light of our own precedent. A sentencing hearing might be warranted if life without parole were a permissible sentence; but, based on our case law and the interplay between Mississippi's sentencing statute and its parole statute, it is clear that *Miller* requires this Court to find Section 47-7-3(1)(h) unconstitutional as applied to juveniles convicted of murder. The majority, however, abrogates both the parole statute and the applicable sentencing statute. Miss. Code Ann. § 97-3-21; Miss. Code Ann. § 47-7-3(1)(h).

¶27. Finally, I find the majority's holding to be a purely procedural pronouncement that fails to provide any meaningful solution. If, on remand, the trial court imposes "life imprisonment notwithstanding the provisions of Mississippi Code Section 47-7-3(1)(h)," the revised sentence will have no effect.

¶28. Our circuit courts (*i.e.*, the "sentencing authority") have no authority to impose anything other than a life sentence upon a conviction of murder. Miss. Code Ann. § 97-3-21 (Rev. 2006). Yet, the majority adds an additional sentencing option of life without parole. This holding is in clear conflict with the legislature's clear and unambiguous declaration that the Parole Board "shall have *exclusive* responsibility for the granting of parole as provided

16

by Section[] 47-7-3 . . . ." Miss. Code Ann. § 47-7-5(3) (Rev. 2011) (emphasis added). Because the executive branch, not the judiciary, has jurisdiction over parole matters, any language regarding parole in a sentencing order for murder constitutes "surplusage and in no way binds the parole board . . . ." **Brown v. State**, 731 So. 2d 595, 599 (Miss. 1999). Therefore, to give any effect to *Miller*'s prohibition on mandatory sentences of life without parole for juveniles convicted of homicide offenses, this Court should declare Mississippi Code Section 47-7-3(1)(h) unconstitutional as applied to juveniles and leave the sentencing statute undisturbed. Accordingly, I dissent and would grant and render post-conviction relief to Jones regarding his *Miller* claim.

**CHANDLER AND KING, JJ., JOIN THIS OPINION.**